Lydia Gibbons *v.* The Moyamensing Hook and Ladder·
Company No. 1 of Chester, Pennsylvania.    William·
Provost, Jr., Appellant.

*Practice, S. C.—Practice, C. P.—Auditor's findings of fact—Review—Dis-*
*tribution of proceeds of sheriff's sale.*

An auditor's finding, in a contest over the proceeds of a sheriff's sale,
that a mechanic's lien creditor had agreed to release his right of lien as an
inducement to another person to advance money upon a mortgage will
not be reversed by the Supreme Court where there is evidence to support:
the finding, although a different conclusion might have been reached from
the testimony.

Argued Feb. 7, 1898. Appeal, No. 214, Jan. T., 1897, by William Provost, Jr., from order of C. P. Delaware Co., March T., 1896, No. 73, dismissing exceptions to auditor's report. Before WILLIAMS, McCOLLUM, MITCHELL, DEAN and FELL, JJ. Affirmed.

Exceptions to report of auditor, distributing the proceeds of a sheriff's sale of the real estate of the defendant.

The auditor, J. B. Hannum, Esq., found that William Provost, Jr., had erected, for the defendant in the execution, a three story brick building. The plaintiff, Lydia Gibbons, agreed to advance the money upon the mortgage for the erection of the building. The auditor found specifically as follows:

After the plaintiff had advanced a portion of her money for the purchase of the ground and some on account of the building, upon the faith of her understanding that she was to be secured by a first mortgage, and when there still remained in the hands of her agent the sum of $3,284, he (evidently thinking it time to have some written evidence as to the standing of his client's mortgage) informed the fire company that he would not pay out any more moneys until a release of mechanics' liens was furnished. This information was given by Mr. Lenny to Mr. Provost, who after consultation with the attorney for the fire company, gave a bond of indemnity against such liens. This bond was given on March 11, 1893, and upon the faith of it, the mortgagee's agent at once parted with $2,000 of the balance of the mortgage moneys then on hand, which went to the contractor, Provost. In this bond Mr. Provost solemnly covenanted under his hand and seal, after reciting therein, " it is desired to indemnify against " all mechanics' liens, that he would " at all times hereafter well and sufficiently save, defend, keep harmless and indemnify the said Moyamensing Hook & Ladder Co., etc., its successors and assigns and the premises . . . . of and from all . . . . charges, liability, or expense on account of any claims or liens for work and labor done, or material furnished for and about the construction and erection of said building." While this bond was given in terms to the owner of the building, according to the common practice, it enured to the benefit of the mortgagee of the owner, whose mortgage is already a matter of record. The fact is that the bond was given instead of a

release of liens, such as is usually given to the owner, where it is desired to secure a first mortgage loan on a property subject to mechanics' liens, and the time for filing them has not expired. Had this paper been in the form of a release of liens and signed by Mr. Provost, as contractor, there can be no question but that it would have been good in favor of a mortgagee advancing money on the faith of it: Brown v. Williams, 120 Pa. 24.

It is not important that the covenant against liens should be in any special form. Any form of words or written instrument by which the contractor covenants or agrees not to file or to protect the other against liens, will not only destroy the contractor's right to lien, but also that of subcontractors: Long v. Caffrey, 93 Pa. 526; Scheid v. Rapp, 121 Pa. 593; Schroeder v. Galland, 134 Pa. 277; Ballman v. Heron, 160 Pa. 377; Fidelity Life Association v. Jackson, 163 Pa. 208.

From these and kindred cases it is settled that a contractor who, by any form of writing, stipulates that he will not file, or that he will keep the building free of mechanics' liens, cannot afterwards obtain the benefit of such a lien.

In order to avoid his covenant to this effect, in this case, and the consequent loss of his right to lien, the contractor sets up that his bond of indemnity was not delivered to the owner, but was executed and put in escrow with the Delaware County Trust Company, to be delivered to the owner upon receiving settlement of the moneys due him on the contract. Taking the contractor's testimony alone, and excluding all else, his position amounts to this : That upon being informed that it was necessary for the fire company to have a release of mechanics' liens before the mortgagee would advance any more money, he, the contractor, while declining to give a release of liens, agrees to give, and does give, in lieu thereof, his bond of indemnity, in which he covenants to protect the premises against such liens ; that after signing such a bond he either advises or at least permits the agent for the mortgagee to be advised that the proper bond has been given ; that upon this information the mortgagee hands over to the fire company $2,000 of the remaining mortgage moneys, which upon the same day is turned over to the contractor; that at some time after the execution of this bond (when, the contractor does not state) it is taken to the Delaware County Trust Company, and there deposited, with

this memorandum indorsed upon it, at the direction of the contractor: " To be held by Trust Company until Mr. Provost, the obligor, receives the balance due him, and so informs the company; " that with this bond in possession of the trust company, and still performing its function of drawing the mortgage moneys, he receives full settlement of the balance of the mortgage fund, such other moneys as the company can raise, and takes the fire company's note for the balance due him; that at a still later date (when, he does not say) the contractor calls on the trust company and directs the following indorsement to be made on the bond: " To be held until a certain note of $2,836.40 is paid, and this company is so informed by Mr. Provost; " that he never communicated in any way to Mr. I. Engle Cochran, Jr., acting for the mortgagee, that his, bond had not been delivered and was not to be delivered until certain conditions had been performed ; that, after getting all the mortgagee's money, he appears at the trust company, demands the surrender of his bond and finally files a lien, in direct breach of his covenant, under which he now claims priority of lien over mortgagee, whose moneys were thus secured for his benefit.

The contractor here, in language of the court in Waters's Appeal, 35 Pa. 523, having so acted as to induce the belief that he would not file a mechanic's lien, is estopped from setting up his lien against the person who gave credit to the fire company upon the faith of the existence of such a state of facts. And again in the language of Green's Appeal, 97 Pa. 342, " Law deals with the expression and acts of the parties, rather than their secret intentions."

Mr. Provost having acted in such a way as to induce the mortgagee to part with her moneys upon the faith of his bond of indemnity, his mouth is closed as to her when he undertakes to set up a secret agreement under which the bond was not delivered to the owner until the contractor had been paid. It will not do to say the bond was only given for the benefit of the fire company, and that the mortgagee and the trust company as guarantor of her mortgage as a first lien had no interest in it.

What was the bond given for? The owner of the property gained no security against liens from it. Mr. Provost did not offer any surety further than his own obligation. As far as the

owners were concerned, they were as well protected without this bond as with it.   Upon being paid the contract prices the contractor would have been bound without any bond to this effect, to save the property from mechanics' liens, and he so agreed in his contract.   He was personally responsible, in the first instance, for every item of work and materials furnished under this contract, and the building could only be held liable in case he failed to pay the subcontractors and material men, and these claims could not be collected from him.   His bond, therefore, as far as the fire company was concerned, was simply so much waste paper, and would never have been asked for or given unless it was to have been used for some other purpose than the protection of the company against liens.   What the other purpose was is clearly shown by Mr. Provost's testimony, namely, to enable the fire company to carry out its agreement with the mortgagee for a first mortgage loan and thus secure for the benefit of the company, and the contractor also, the remainder of the mortgage moneys.

Let us see whether Mr. Provost is not completely estopped from claiming any portion of a fund for distribution by the simple fact that he gave and delivered the bond of indemnity.   If the evidence shows he gave this bond and delivered it to the fire company without condition, and that the matter of any condition attached to the delivery was an afterthought, then surely under the authorities already cited, the contractor's right to lien was extinguished absolutely by the mere fact of the giving and delivery of the bond.

The auditor finds as a fact that the bond was executed and delivered on March 11, 1893, without any condition whatever attached to such delivery.   And that it was given by Provost to said company in lieu of the release of mechanics' liens demanded by Cochran, and for the purpose of enabling the fire company to get for him, Provost, the money then in the hands of Cochran.

In the first place the bond states that it was sealed and delivered on that date, in the presence of A. A. Cochran, Esq., who attests the fact by appending his signature.

There being no evidence of any kind to contradict this written declaration of the obligor himself that he had delivered the bond the proof of the delivery is complete and absolute : Grim

v. School Directors, 51 Pa. 219. The only evidence of any condition, in regard to the delivery of the bond, is the memoranda indorsed thereon in lead pencil. This was done at Mr. Provost's request. Upon what date these indorsements were made is not shown. But it is shown that neither mortgagee nor her agent had any knowledge of them, and hence as to her they can have no effect. There was not a word said to the title officer of the Trust Company, either by Mr. Provost or anybody else, so far as appears, about the bond being deposited with the trust company as a stakeholder. It was accepted by him in place of a release of liens. Upon the faith of it he paid over to the fire company for Mr. Provost, April 6, 1893, the balance of $1,284 of the mortgagee's money which had been deposited for this purpose and delivered a title policy to the mortgagee, insuring her mortgage as a first lien. According to the testimony of Mr. Hinkson, the title officer in the Trust Company, it would seem that the bond was not delivered to him on March 11, 1893, because he says it was accompanied by Mr. I. E. Cochran's check for $1,284 for the balance of the mortgage loan which is dated March 23, 1893. As there is no evidence that the check was postdated, and no reason appears why it should have been, then if Mr. Hinkson's recollection is correct the bond was not delivered to the trust company until March 23, 1893, or later, Mr. Hinkson says it was about April 6. In the meantime where was it? Had there been no delivery of it? In the absence of any answer to these questions from the parol evidence, and in view of the fact that the question is, to say the least, enveloped in great uncertainty, we are bound to conclude that the asseveration in the instrument itself that it was sealed and delivered on March 11, 1893, is verity. This being so, Mr. Provost's right to lien was at that time irrevocably lost, and he has no standing as a claimant before the auditor. Especially has he none against the mortgagor who parted with the moneys for his benefit upon the faith of the giving of this bond.

Exceptions to the auditor's report were dismissed by the court.

*Errors assigned* were in dismissing exceptions to auditor's report.

W. B. Broomall, with him George B. Lindsay, for appellant.

O. B. Dickinson, with him H. C. Howard, for appellee.—An auditor's finding of facts affirmed by the court below will not be reversed except for clear error: DeWolff's Est., 181 Pa. 187 ; Muehling v. Muehling, 181 Pa. 483.

PER CURIAM, February 21, 1898 :

This is a contest over the proceeds of a sheriff's sale of the defendant's real estate. The appellant is the holder of a mechanic's lien, and claims payment out of the fund. The plaintiff, the appellee, is the holder of a mortgage upon the same property, and asserts that the appellant is in equity estopped from claiming under his lien because he had agreed to release his right of lien as an inducement to her to advance money upon the mortgage, which was paid to him. The auditor, after hearing the testimony at length, found the facts in favor of the plaintiff and reported a decree in her favor. The findings were reviewed in the court below and affirmed. The legal conclusions follow logically upon the facts.

An appeal in this case was therefore directed against the findings of fact, and the burden assumed by the appellant was that of showing clearly that they were mistaken. To show that they are in some doubt, or that they rest on evidence that was attacked, is not enough. We have looked into the testimony in this case. We can see that the auditor could have reached a different conclusion from that embodied in his report, but we are not prepared to say that he should have done so, or that substantial justice has not been done by the distribution which he recommended.

The assignments of error, nearly all of which are to the findings of fact, are therefore overruled, and the decree of distribution appealed from is affirmed.